JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Larry Johnson, appeals his bench trial conviction for felonious assault in violation of R.C. 2903.11, aggravated burglary in violation of R.C. 2911.11, and possession of criminal tools in violation of R.C. 2923.34. The victim in this case is a neighbor of defendant and his family and is a friend of his wife. At the time of this incident, defendant's wife was in the hospital and the victim had been helping with the defendant's stepson, her friend's child.
 {¶ 2} On the evening in question, defendant testified that he had gone to a bar to watch a Mike Tyson fight. He testified that after the fight he went home. The victim testified that at eleven on that Saturday evening in early June, defendant phoned the victim and invited her to smoke a joint with him. She said she would, and he told her he would be over in fifteen minutes. A little while later, he called back and asked her whether she would like to watch a pornographic video and she said no. He then asked her whether she smoked crack, to which she answered that she did occasionally. He told her he would be there shortly and would also bring some crack along. When he had not arrived half an hour later, the victim tried phoning him but there was no answer.
 {¶ 3} Defendant called her some time later and told her he was still cooking the crack. She then told him that she did not want crack and told him not to come over. She related a story to him in which another woman had let a man in and he had attacked her with a wrench. Defendant laughed and said that he was not like that.
 {¶ 4} An hour and a half later, the victim's dog began barking and then she heard a knock at the door. Expecting her neighbor, she opened it. At the door was a man wearing a ski cap pulled down over his face with eyeholes cut in it and black gloves. He was carrying a kitchen knife about six inches long, including the handle. He was also wearing a grey tee-shirt with writing on it. He attacked her with the knife. When she raised her hands to defend herself, her left hand was badly cut. During the scuffle, the glass kitchen table was overturned and broken. When she jumped over the broken table, she cut her knee but managed to escape. Running out of the house, she looked back over her shoulder and saw defendant run through the yards to his own house. She testified that she briefly ran back into her house to check on her nine-year-old son, who was sleeping, and to get her cordless phone. She called 911 from her front yard.
 {¶ 5} When the police arrived, she identified her neighbor, the defendant, as the man who had attacked her. She later testified that, although he wore a ski mask, she recognized his arms, his build, his walk, and his stoop. When the police went to his house shortly after, defendant stated that he had spoken with the victim on the phone that evening, but he had not gone over there because he was too tired. At this time defendant was wearing only blue boxer shorts. The police arrested him and took him to the victim, who was still being treated by EMS in her yard. She identified defendant as the attacker.
 {¶ 6} Convicted in a bench trial, defendant now appeals, presenting five assignments of error, the first of which states:
 {¶ 7} The trial court was without jurisdiction to conduct a bench trial because the requirements of R.C. 2945.05 were not strictly followed.
 {¶ 8} Defendant claims that his conviction must be reversed because the trial court did not fully comply with the statutory requirements of R.C. 2945.05, as explained in State v. Pless
(1996), 74 Ohio St.3d 333. R.C. 2945.05 states:
 {¶ 9} In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I. . . . . . . ., defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
 {¶ 10} Defendant executed his jury waiver in writing prior to entering the courtroom. The signature was witnessed by his attorney. The court fully questioned defendant concerning the voluntary nature of his waiver and fully informed him of his constitutional right to a trial by jury. Upon verifying the knowing and voluntary nature of the waiver, the court immediately proceeded with the state's opening argument.
 {¶ 11} Defendant argues that Pless requires the jury waiver to be signed in open court and requires the court to journalize the waiver before the beginning of trial. This court rejected these same arguments in State v. Carothers, Cuyahoga App. No. 82860, 2004-Ohio-51. This court held that if in open court the defendant acknowledges his signature on the jury waiver and states that his waiver is knowing, intelligent, and voluntary and the court ascertains that this is so and if the waiver is filed and made part of the record in the case, then the statute is strictly complied with. Id. ¶ 10. This court expressly dismissed the argument that the waiver had to be filed prior to the start of trial. It also dismissed the argument that the waiver had to be signed in open court. Accordingly, this assignment of error is without merit.
 {¶ 12} For his second assignment of error, defendant states:
 {¶ 13} The trial court incorrectly premised its verdict upon information not in evidence, in violation of Mr. Johnson's Fifth,Sixth and Fourteenth Amendment rights to trial, confrontation and due process of law.
 {¶ 14} Defendant argues that the court incorrectly considered evidence outside the record in its decision to convict him, because the court noted defendant's testimony about the Tyson fight as being inconsistent with what the court remembered about the fight. Defendant had testified that the fight had lasted only a couple of rounds and that Tyson had severely beaten his opponent. In its announcement of its decision, the court explained a number of factors which influenced its decision. After noting that the victim's version of the events of the evening had remained consistent throughout from the time she spoke to the police, to the hospital until the time she testified in court, the court stated that the evidence showed that the victim had definitely been attacked and that she had no motivation to invent her story because there had never been a problem between these neighbors. The court then stated:
 {¶ 15} There are too many inconsistencies in the defendant's version of what happened, not the least of which is the clear — either it's a misunderstanding or confusion or something I can't explain about the fight you claim you were watching that evening.
 {¶ 16} That was, as you said, over after two or three rounds with Mike Tyson severely beating his opponent. I think that you will find, Mr. Johnson, that Mike Tyson lost that in the eighth round to Mr. Lewis. But that is just one of many, many factorsthat have entered into my decision.
 {¶ 17} Tr. at 318, emphasis added.
 {¶ 18} "`The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print.'" State v. King (1983),10 Ohio App.3d 161, 165, quoting Patterson v. Colarado, ex. rel.Attorney General (1907), 205 U.S. 454,462. Defendant argues that the court's reliance on details of the fight was not based on evidence taken in open court.
 {¶ 19} The judge indicated, however, that his knowledge of defendant's erroneous testimony concerning the fight was only a part of his reasons for not believing defendant. If these comments are omitted from the court's decision, the evidence is still overwhelming in favor of conviction. As previously noted, the victim's story remained consistent from her first conversation with the police, to her statements to the hospital workers, and to her final testimony at trial. Additionally, the detective's testimony was consistent with the victim's. For example, the bloody tee-shirt the police found fit the description of the tee-shirt the victim had described the perpetrator as wearing. The police found a pair of black gloves in defendant's house which fit the victim's description of the gloves the perpetrator was wearing. The police also found a pornographic video and the victim had told them that defendant had asked her if she wanted him to bring a pornographic video with him. The police, when they searched defendant's home, also found the red boots the victim had described the perpetrator as wearing.
 {¶ 20} The defendant's testimony, on the other hand, was inconsistent with statements the detectives reported he made to them. For example, defendant initially told a detective he had not been at the victim's house that evening, but later testified he had been. Defendant also testified that he had never told anyone that he had gone to sleep that night, despite the testimony of two officers to the contrary. Defendant also denied telling the police that the victim had cut her hand on a crack pipe, although the police testified to this statement.
 {¶ 21} There were further inconsistencies. Two officers testified that they found the bloody grey tee-shirt in the hallway with the black gloves next to it. Defendant, on the other hand, insisted in his testimony that the tee-shirt was in the basement with the other dirty laundry. He also denied any knowledge of the black gloves, which the officers testified were in the hallway next to the tee-shirt. Another inconsistency occurred in defendant's testimony that he left because the victim became paranoid after taking one drag of the crack pipe. He claimed that she was screaming so loudly that he could still hear her when he returned to his house. The detectives, on the other hand, described her as upset, not irrational or paranoid.
 {¶ 22} The trial court stated it believed that the victim had been attacked that evening. The court clearly limited its observation regarding the Tyson event as only "one of many, many factors" in his decision. Without defendant's extraneous comments about the Tyson event, the evidence overwhelmingly favors conviction. We therefore conclude this assignment of error is without merit.
 {¶ 23} For his third assignment of error, defendant states:
 {¶ 24} The trial court plainly erred when it admitted evidence of dna testing that was not scientifically reliable.
 {¶ 25} The victim both told the police and testified that her attacker had worn a ski cap with eye holes cut into it. A ski cap with eye holes was found in her driveway near the door used by her attacker. Defendant argues that the DNA evidence taken from this ski cap should not have been admitted when the scientist testified that she could match only three of the usual thirteen markers because there was not sufficient DNA material found on the cap. The United States Supreme Court set the standard for the admission of scientific evidence in Daubert v. Merrell DowPharmaceuticals (1993), 509 U.S. 579, stating:
 {¶ 26} Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.
 {¶ 27} Id. at 592-593, footnotes omitted. Defendant does not argue that DNA tests are scientifically unreliable. Instead, he argues that whereas the usual DNA test results provide a probability in the trillions, the results of this test were very limited in scope because they revealed only that the DNA matched one in 10,400 people and that he could not be excluded as a source of that DNA material. He argues, therefore, that the test results were not sufficiently reliable for use at trial.
 {¶ 28} The transcript reveals that the court was well apprised of the limited value of the test results. As the scientist testified, "[t]hose three DNA spots were consistent with the profile of Larry Johnson, and therefore, Larry Johnson could not be excluded as possibly being a source of the DNA found on the ski mask." She did not state or imply that the DNA test in any way directly implicated defendant, only that it did not eliminate him as someone who could have worn the cap.
 {¶ 29} On cross-examination, defense counsel clearly elicited testimony from the scientist showing that the usual DNA test results provide a probability within the trillions, as opposed to within 10,000. Emphasizing the limits of the test results on the ski mask, he even had the scientist explain how many extra zeros would follow the one in a trillion as opposed to 10,000. The scientist admitted that there was a small possibility that some of the DNA came from a second person. She stated, when asked if two or more people could have contributed to the DNA found in the mask, "not very many, but it's possible that it could be from another person. It would be unlikely, but it is possible." On the whole, the detailed and intelligent questioning by defense counsel properly limited the evidentiary value of the scientist's testimony.
 {¶ 30} The evidence challenged was not scientifically unreliable. Moreover, under direct and cross-examination its evidentiary value was limited to showing that defendant could not be excluded as a person who had worn the ski mask, and that the odds of any person being the person who had worn the ski mask was one in 10,400. This assignment of error is, therefore, without merit.
 {¶ 31} For his fourth assignment of error, defendant states:
 {¶ 32} Mr. Johnson was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 33} Defendant alleges that his counsel was ineffective for failing to object to the introduction of the DNA testimony concerning the person who wore the ski mask. We have previously determined that the DNA evidence was admissible because of its clearly limited purpose. Accordingly, this assignment of error is overruled.
 {¶ 34} For his fifth assignment of error, defendant states:
 {¶ 35} The post-release control term in the sentence must be vacated because the trial court failed to fully advise Mr. Johnson about post-release control at sentencing.
 {¶ 36} Defendant points out that, although the trial court made reference to post-release control at the sentencing hearing, "the trial court never mentioned the length of time of any post-release control term that might later be imposed, or the fact that the running of the post-release control term would be tolled during an period of imprisonment being served pursuant to a violation of the post-release control term." Appellant's brief at 12.
 {¶ 37} Under R.C. 2967.28(B), post-release control is mandated for a felony of the first degree:
{¶ 38} Each sentence to a prison termfor a felony of thefirst degree, for a felony of the second degree, * * * shallinclude a requirement that the offender be subject to a periodof post-release control imposed by the parole board after the offender's release from imprisonment.
 {¶ 39} The notice requirements for post-release control are specified in R.C. 2929.19(B)(3)(b), (c), (d) and (e), which state in pertinent part:[1]
 {¶ 40} (3) * * * if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:
 {¶ 41} * * *
 {¶ 42} (c) Notify the offender that the offender will besupervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for afelony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree in the commission of which the offender caused or threatened to cause physical harm to a person;
 {¶ 43} (d) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(3)(c) of this section * * *.
 {¶ 44} The court stated to defendant at the sentencing hearing:
 {¶ 45} Your sentence may include a period of post-release control, and what that means in that when you get out, if the parole board puts you on PRC or post-release control, you're going to have to report to them regularly after you get out.
 {¶ 46} And if you don't do that, they can send you back toprison for up to half your original sentence. By the way, they can also charge you with another charge, which would be escape, and that could get you in more prison time.
 {¶ 47} Tr. at 330-331. Emphasis added.
 {¶ 48} Under R.C. 2929.19(B)(3)(b), the court is required to inform the defendant he will be supervised after he leaves prison. This requirement arises from his conviction for a felony of the first degree. In the case at bar, the trial court informed defendant that he might be subject to post-release control, but it did not inform him that it was mandatory. The trial court erred, therefore, in failing to notify defendant that he will be subject to post-release control upon his release from prison.
 {¶ 49} A second requirement under R.C. 2929.19(B)(3) is that the court
 {¶ 50} (e) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(3)(c) or (d) of this section, and if the offender violates that supervision or acondition of post-release control imposed under division (B) of section 2967.131 of the Revised Code, the parole board mayimpose a prison term, as part of the sentence, of up toone-half of the stated prison term originally imposed upon the offender[.]
 {¶ 51} Emphasis added. The court did inform defendant that if he violated a condition of post-release control, the parole board may impose a sentence of up to one-half his original prison sentence. This statutory requirement, therefore, was met.
 {¶ 52} Defendant also complains that the trial court failed to inform him at the sentencing hearing of the length of his post-release control.[2] The duration of post-release control is specified in R.C. 2967.28(B), which reads:
{¶ 53} Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, * * * shallinclude a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be of one of the following periods:
{¶ 54} For a felony of the first degree * * * five years;
 {¶ 55} For a felony of the second degree that is not a felony sex offense, three years * * *. Emphasis added.
 {¶ 56} Because defendant was convicted of a first degree felony, he is subject to a mandatory five-year post-release control. The trial court did not notify defendant of the length of his term of post-release control. However, we reject the argument that such notice was required.
 {¶ 57} R.C. 2967.28(B) does not explicitly require that the court specify the duration of post-release control in the number of years. This statute requires only that the sentence include a mandatory post-release control. The second sentence of (B) merely defines the length of such control as five years for a first degree felony. It is R.C. 2929.19 that provides the notice requirements, and it does not address length of control, except in the event of a violation of post-release control.
 {¶ 58} We are cognizant that an argument could be made that because R.C. 2929.19(B)(3)(a) requires the court to "[i]mpose a stated prison term" and because R.C. 2967.28 states that "[e]ach sentence to a prison term for a felony of the first degree * * * shall include a requirement that the offender be subject to a period of post-release control" and because R.C.2967.28(B)(1) states those periods "shall be * * * [[f]or a felony of the first degree * * * five years," we may infer that the court is also required to specify the length of the term of post-release control. We decline to follow this argument, however, when R.C. 2929.19 has so clearly stated what the notice requirements are and has not specified length of post-release control as one of them.
 {¶ 59} Defendant erroneously relies upon State v. Morrissey
(Dec. 18, 2000), Cuyahoga App. No. 77179, in support of his argument that defendant must be informed of a "definite period" of post-release control. The length of post-release control was never the issue in Morrissey. Rather, defendant had not been informed of any post-release controls whatsoever. Moreover, the issue of notice was raised in the context of accepting a plea. The question was whether Morrissey's plea was knowing and voluntary if he were not informed of the "existence" of post-release control and the "consequences" of violating it.Morrissey never defined with any further specificity those general requirements.
 {¶ 60} The trial court did fail, however, to satisfy one requirement of R.C. 2929.19 when it failed to inform defendant that his post-release control was mandatory rather than discretionary. The state denied any error in the imposition of the post-release control sentence, however, and failed to request a new hearing. "Post-release control is part of an offender's criminal sentence and must be imposed at the sentencing hearing as well. Because the amendments to Ohio's sentencing scheme give the State the right to appeal sentencing orders, a judge's error in imposing sentence, even a mandatory sentence, is waived if the State fails to appeal." State v. Davis, Cuyahoga App. No. 83033, 2004-Ohio-1908 ¶ 21, footnotes omitted. Nor will this court remand a case for resentencing for proper imposition of post-release control if the state never appealed or cross-appealed.
 {¶ 61} We note, however, that the journal entry states: "POST RELEASE CONTROL IS A PART OF THIS PRISON SENTENCE FOR THE MAXIMUM PERIOD ALLOWED FOR THE ABOVE FELONY(S) UNDER R.C. 2967.28. This statement is inconsistent with the court's statement at the sentencing hearing.
 {¶ 62} We, therefore, vacate the journal entry and remand this case for the limited purpose of correcting its journal entry to accurately reflect what the court announced at the sentencing hearing regarding post-release control.
 {¶ 63} Affirmed in part, vacated in part.
It is ordered that appellee and appellant share equally the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., Kilbane, J., Concur.
[1] Section (a) of this subdivision orders the court to impose the underlying sentence. Section (b) states: "Notify the offender that, as part of the sentence, the parole board may extend the stated prison term for certain violations of prison rules for up to one-half of the stated prison term[.]" Defendant does not complain about these two requirements.
[2] Defendant also cites R.C. 2967.(F)(4) to support his claim of an additional notice requirement. This statute, however, makes no mention of what notice is required. The statute merely clarifies how time is computed for post-release control.