JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Darnell Ford, appeals from the judgment of the Common Pleas Court, entered after a guilty plea, finding him guilty of kidnapping and rape, and sentencing him to fifteen years incarceration. For the reasons that follow, we affirm.
 {¶ 2} In August 2003, a six-count indictment was returned against Ford. The indictment charged him with one count of aggravated burglary, in violation of R.C. 2911.11, two counts of kidnapping, in violation of R.C. 2905.01, and one count of felonious assault, in violation of R.C. 2904.11. These four charges all contained a sexual motivation specification, in violation of R.C. 2941.147, and a sexually violent predator specification, in violation of R.C. 2971.01(I). The indictment also charged Ford with one count of disrupting public service, in violation of R.C. 2909.04, and one count of rape, in violation of R.C. 2907.02, with a sexually violent predator specification.
 {¶ 3} The indictment arose out of events that began when Ford's live-in girlfriend gave a birthday party for him. He became intoxicated and drove off in her car. When he came back to the party, he punched the girlfriend and caused injuries requiring medical treatment. As a result of this incident, Ford was charged with domestic violence and felonious assault in Case No. CR-431345, to which he pled no contest and was found guilty.
 {¶ 4} While on bond awaiting sentence in that case, Ford snuck into the girlfriend's house. When the girlfriend returned home later that evening, Ford physically assaulted her, and choked her so violently that she bit off a piece of her tongue during the ensuing struggle. Ford threatened to kill her, then raped her and held her hostage in her home until the next morning. When the victim's daughter came to the house in the morning and found her mother naked and bruised, she called 9-1-1 while Ford fled the scene.
 {¶ 5} After several pretrial conferences, Ford and his counsel informed the court on the morning of trial that a plea agreement had been reached. Pursuant to the plea agreement, Ford pled guilty to one count of kidnapping and one count of rape, with the sexually violent predator specification deleted from both counts, and he stipulated to being classified a sexual predator. In exchange for the plea, the remaining counts of the indictment were nolled.
 {¶ 6} The trial judge accepted Ford's plea and sentenced him to a total term of fifteen years incarceration: the maximum ten years each for the kidnapping and rape convictions, to be served concurrently, but consecutive to five years incarceration in Case No. CR-431345.
 i. GUILTY PLEA {¶ 7} R.C. 2971.03(A)(3), regarding sentencing of individuals who are found guilty or plead guilty to a sexually violent offense with a sexually violent offender specification, provides that:
 {¶ 8} "* * * [I]f the offense is an offense other than aggravated murder, murder, or an offense for which a term of life imprisonment may be imposed, [the court] shall impose an indefinite prison term consisting of a minimum term fixed by the court from among the range of terms available as a definite term for the offense, but not less than two years, and a maximum term of life imprisonment." Thus, as indicted, Ford was subject to a prison term of not less than two years up to a maximum of life in prison.
 {¶ 9} In his first assignment of error, Ford contends that his guilty plea was not made knowingly or intelligently because he was incorrectly informed that the violent sexual predator specification contained in the indictment carried a mandatory life sentence. The record does not support this argument, however.
 {¶ 10} At the plea hearing, Ford's counsel told the trial judge that in all of the plea discussions, the prosecutor had indicated that the offenses, as charged, were punishable by terms of incarceration of three to ten years. She told the court that the prosecutor had informed her only that morning, however, that the sexually violent predator specification meant that Fordcould be sentenced to life in prison.[1] Counsel told the trial judge that Ford was having "a very difficult time with the plea" and was only "pleading to avoid the life sentence."
 {¶ 11} The prosecutor then explained the potential penalties for the kidnapping and rape charges as indicted:
 {¶ 12} "[T]he defendant stands indicted in a six count indictment. Count three as indicted is kidnapping in violation of R.C. 2905.01. As indicted that is a felony of the first degree. It carries a R.C. 2941.147, sexual motivation specification, and a R.C. 2971.01(I) sexually violent predator specification.
 {¶ 13} "As indicted, that is punishable by three to ten years. The sexual motivation specification involves a mandatory finding of some level of sexual classification. The sexually violent predator specifications adds life specifications onto the underlying sentence making this a felony of the first degreepunishable by three to ten years to life.
 {¶ 14} "* * *
 {¶ 15} "Count six, as indicted, is rape in violation of R.C.2907.02. As indicted, that is a felony of the first degree. It also carries a R.C. 2971.01(I) sexually violent predator specification. That adds the life specifications making thispunishable by three to ten years to life." (Emphasis added.)
 {¶ 16} Thus, it is apparent from the record that Ford was properly informed that the sexually violent predator specification could include a life sentence; he was not informed that it carried a mandatory life sentence.
 {¶ 17} Although we are astounded that both the prosecutor and defense counsel only learned on the morning of trial that the specification carried a potential life sentence, the record indicates that Ford was correctly informed prior to his plea of the possible sentence to the charges contained in the indictment.
 {¶ 18} Appellant's first assignment of error is overruled.
 a. COMPETENCY EVALUATION {¶ 19} At the plea hearing, before Ford entered his plea, defense counsel told the trial court that "there's a question of the defendant's mental health" because Ford and a detective involved with the case had informed her only that morning that Ford had been evaluated and received mental health treatment when he was previously in prison.
 {¶ 20} In light of this statement, Ford now contends that the trial court erred in not ordering a competency evaluation before accepting his guilty plea.
 {¶ 21} Due process principles require that a criminal defendant who is legally incompetent may not be tried. State v.Hessler, 90 Ohio St.3d 108, 124, 2000-Ohio-30. R.C. 2945.37
requires a competency hearing if a request is made prior to trial.
 {¶ 22} Here, although defense counsel told the trial court there was an "issue" regarding Ford's competency, she did not file a motion prior to trial requesting a hearing nor did she orally request a hearing at any time during the plea hearing. Accordingly, Ford has waived any objection to the claimed error.Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43.
 {¶ 23} Errors otherwise waived may be considered by an appellate court under the doctrine of plain error where the error affects a substantial right. See Crim.R. 52(B). Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, however, under exceptional circumstances and only to prevent a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We find no plain error here.
 {¶ 24} The right to a competency hearing rises to the level of a constitutional guarantee where the record contains sufficient "indicia of incompetence" to necessitate inquiry to ensure the defendant's right to a fair trial. State v. Berry
(1995), 72 Ohio St.3d 354, 359. Here, beyond defense counsel's assertion that there was an "issue" regarding Ford's competency, the record contains nothing to suggest any indicia of incompetence requiring a competency hearing. The fact that Ford had previously received mental health treatment does not suggest that he was legally incompetent to stand trial. "A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." Hessler, supra, citing State v. Bock (1986),28 Ohio St.3d 108, 100. Without any indicia of incompetency nor a request for a hearing, the trial court did not err in not ordering a competency evaluation.
 {¶ 25} Appellant's second assignment of error is overruled.
 POST-SENTENCE MOTION TO RECONSIDER SENTENCE OR WITHDRAW PLEA {¶ 26} Approximately one week after he was sentenced, Ford filed a motion to reconsider the sentence, or, alternatively, to withdraw his plea. In his motion, Ford asserted that the maximum sentence was not warranted because this was not the most serious form of rape or kidnapping. He also asserted that the State had not responded to defense counsel's discovery requests until less than one week prior to trial and there were many factual issues regarding the offenses that had not been brought to the attention of the court. Finally, he asserted that he would have gone to trial had he not been confronted that day with the possibility of life in prison. The trial court denied Ford's motion without a hearing. In his third assignment of error, Ford contends that the trial court erred in denying his motion to withdraw his plea without a hearing.
 {¶ 27} Crim.R. 32.1 governs the withdrawal of a guilty plea, and provides:
 {¶ 28} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 29} Thus, a defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice. State v.Smith (1977), 49 Ohio St.2d 261, paragraph one of the syllabus.
 {¶ 30} An appellate court applies an abuse of discretion standard when reviewing a trial court's ruling on a motion to withdraw a plea. State v. Xie (1992), 62 Ohio St.3d 521, 526. Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed. Id. "`What constitutes an abuse of discretion with respect to denying a motion to withdraw a guilty plea necessarily is variable with the facts and circumstances involved.'" State v. Cheney, Cuyahoga App. No. 80686, 2002-Ohio-4916, at ¶ 17, quoting State v.Walton (1981), 2 Ohio App.3d 117, 119. Post-sentence motions to withdraw guilty pleas are not freely granted, however, because that would allow defendants to withdraw their pleas when they receive an unfavorable sentence. State v. Wyley (Mar. 15, 2001), Cuyahoga App. No. 78315. Ford initially argues that he should have been allowed to withdraw his plea because defense counsel was ineffective for not advising him prior to the morning of trial that the potential penalty for the sexually violent predator specification was life in prison.
 {¶ 31} In order to establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus,certiorari denied (1990), 497 U.S. 1011. "`[T]he defendant must show that, but for counsel's errors, he would not have pleaded guilty * * *.'" Xie, supra at 524, quoting Hill v. Lockhart
(1985), 474 U.S. 52, 59.
 {¶ 32} Here, it is apparent that counsel's failure to ascertain that Ford faced a possible life sentence on the sexually violent predator specification until the prosecutor told her so on the morning of trial is performance that falls below an objective standard of reasonable representation. She did, however, correctly advise Ford of the possible sentence before he entered his guilty plea and, therefore, we fail to see how he was prejudiced in entering his plea. Ford had the necessary information to make a knowing, intelligent plea: he knew the possible sentence for the sexually violent predator specification and he knew that in exchange for his plea to one count each of rape and kidnapping, the State would delete the specification from each count, thereby eliminating the possibility of life in prison. Therefore, under these circumstances, we do not find ineffective assistance of counsel.
 {¶ 33} Ford also argues that he should have been allowed to withdraw his plea because he would have gone to trial that day but for the sudden knowledge that he faced life in prison. This argument is meaningless. As indicted, Ford faced the possibility of life in prison. Therefore, even if he had learned of the possible sentence well before trial, any decision regarding whether or not to go to trial would have been made with this possibility in mind. Moreover, any plea agreement forces the defendant to make choices. Here, the trial judge advised Ford before he entered his plea that, if he pled guilty, he would be sentenced to 15 years incarceration. Thus, Ford knew that he could take a chance of being convicted at trial, with the possibility of life in prison, or accept a shorter definite sentence.
 {¶ 34} Finally, Ford contends that, at a minimum, the trial court should have held a hearing on his Crim.R. 32.1 motion. A hearing on a post-sentence motion to withdraw a guilty plea is not required, however, if the facts alleged by the defendant and accepted as true by the trial court would not require the court to allow the withdrawal of the plea. Wyley, supra, citingState v. Wynn (1998), 131 Ohio App.3d 725, 728; State v.Hamed (1989), 63 Ohio App.3d 5, 7; State v. Milton (June 1, 1995), Cuyahoga App. No. 65828. Accordingly, the trial court did not abuse its discretion in denying Ford's motion to withdraw his plea without a hearing.
 {¶ 35} Appellant's third assignment of error is overruled.
 i. MAXIMUM SENTENCE {¶ 36} In his fourth assignment of error, Ford contends that the trial court erred in sentencing him to the maximum sentence.
 {¶ 37} R.C. 2929.14(C) specifies when a court may impose a maximum prison term:
 {¶ 38} "* * * The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 39} Thus, in order to lawfully impose the maximum term, the trial court must find that the offender satisfies one of the criteria set forth in R.C. 2929.14(C). State v. Edmonson
(1999), 86 Ohio St.3d 324, 329. While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. State v.Hollander (2001), 144 Ohio App.3d 565. In addition, the trial court must give its reasons for its findings. R.C. 2929.19(B);Edmonson, supra.
 {¶ 40} In determining whether an offender poses the greatest likelihood of committing future crimes, a trial court must consider the five factors enumerated in R.C. 2929.12(D), one of which is whether the offender has a history of criminal convictions. Only one of the factors need apply in order to find that the offender poses the greatest likelihood of committing future crimes. State v. Daniels, Cuyahoga App. No. 82972, 2003-Ohio-486, at ¶ 18.
 {¶ 41} Here, in accordance with R.C. 2929.14(C), the trial court found that the maximum sentence was warranted because Ford posed the greatest likelihood of committing future crimes. Prior to sentencing him, the judge reviewed Ford's extensive criminal history on the record. The judge noted that Ford had multiple prior convictions dating back 13 years, including convictions for aggravated assault, sexual battery, breaking and entering, theft, disorderly conduct, drug trafficking, domestic violence and public intoxication. The judge also noted that Ford had previously been incarcerated three times.
 {¶ 42} Accordingly, the judge found that Ford posed the greatest likelihood of committing future crimes, giving his reason for this finding as follows:
 {¶ 43} "He does show a very great or the greatest likelihood of recidivism. He's got prior record, institutional records. This [offense] occurred while on bond, which leads me to conclude that as soon as he's released he may do it over again."
 {¶ 44} On this record, we find the court's determination that Ford posed the greatest likelihood of committing future crimes supported by clear and convincing evidence.
 {¶ 45} Ford also contends, in reliance on Blakely v.Washington (2004), 124 S.Ct. 2541, that the maximum sentence was improper because a jury did not determine any factor that would justify more than a minimum sentence. Blakely concerns the impropriety of a trial court's enhancement of a penalty for a crime beyond the maximum sentence, however, not the minimum. Moreover, because Ford did not raise this issue in the trial court, he has waived it for purposes of appeal.
 {¶ 46} Appellant's assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, P.J., Concurs.
 Ann Dyke, J., Concurs in judgment only.
[1] Incredibly, the prosecutor only learned of the potential sentence after a conversation that morning with his supervisor. Likewise, defense counsel did not know of the potential sentence and had told Ford that the specification was only for sexual offender classification purposes, rather than sentencing purposes.