The STATE of Ohio, Appellant and Cross-Appellee,

v.

HILL, Appellee and Cross-Appellant.

[Cite as *State v. Hill,* 160 Ohio App.3d 324, 2005-Ohio-1501.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 84846 and 84887.

Decided March 31, 2005.

328

William D. Mason, Cuyahoga County Prosecuting Attorney, and Matthew E. Meyer, Assistant Prosecuting Attorney, for appellant and cross-appellee.

David Bodiker, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender; Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellee and cross-appellant.

COLLEEN CONWAY COONEY, Judge.

{¶ 1} In this consolidated appeal, plaintiff-appellant and cross-appellee, the state of Ohio, appeals from the trial court's decision granting the petition for postconviction relief of defendant-appellee and cross-appellant, David Hill. Hill filed a separate appeal challenging his convictions and sentence, which we will treat as a delayed appeal. Finding merit to the state's appeal, we reverse the court's judgment of postconviction relief, which vacated the conviction and reentered judgment in order to allow a direct appeal.

{¶ 2} In December 2002, Hill was charged in case No. CR–430754 with two counts of attempted aggravated murder, each with firearm specifications, and one count of having a weapon while under disability. In January 2003, Hill was charged in case No. CR–432856 with three counts of felonious assault, each with firearm specifications, one count of having a weapon under disability, one count of carrying a concealed weapon, and two counts of attempted murder, each with firearm specifications. The two cases were consolidated, and the matter proceeded to a jury trial.

{¶ 3} In September 2003, a jury found Hill guilty of two counts of attempted murder, two counts of felonious assault, each with one- and three-year firearm specifications, and one count of carrying a concealed weapon. The court sentenced him to a total of 19 years in prison. At sentencing, the trial court also appointed appellate counsel to handle Hill's direct appeal. However, no direct appeal was filed.

{¶ 4} In January 2004, Hill filed a petition for postconviction relief, seeking to vacate his convictions and reenter judgment in order to file a direct appeal. In support of his petition, Hill attached an affidavit from his court-appointed appellate counsel, who stated that while he had been contacted by "court staff"

regarding the appointment, he had received no further information from the court and thus "did not pursue a notice of appeal, review the record, or make any other efforts to undertake Mr. Hill's representation."

{¶ 5} Following a hearing, the trial court granted Hill's petition, vacated his convictions, and reentered judgment. Both Hill and the state filed appeals.

## State's Appeal

{¶ 6} On appeal, the state argues that the trial court erred when it vacated and reentered Hill's judgment of conviction in order to restart the time period for filing a direct appeal and postconviction petition.

{¶ 7} When reviewing a pure question of law, the reviewing court may substitute its judgment for the judgment of the trial court. *Castlebrook v. Dayton Properties* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808. The state argues that the trial court erroneously applied *State v. Gover* (1995), 71 Ohio St.3d 577, 645 N.E.2d 1246, to the circumstances of the instant case. Thus, this matter will be reviewed under a de novo standard.

{¶ 8} The state claims that the trial court erred by vacating and reentering judgment, circumventing the App.R. 4(A) limitation period for filing a direct appeal. Instead, the state asserts that the appropriate remedy would be to seek relief with this court pursuant to App.R. 26(B) and *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, paragraph one of the syllabus, which allows a defendant to reopen his appeal based on the ineffective assistance of appellate counsel.[1]

{¶ 9} Although we disagree with the state's procedural position, we agree with the state's contention that the trial court lacked jurisdiction to consider the petition because Hill had not sought a delayed appeal pursuant to App.R. 5(A).

{¶ 10} App.R. 5(A) allows a criminal defendant, after the expiration of the 30-day period for filing a notice of appeal, to file a motion for delayed appeal. Hill has not filed a motion for delayed appeal with this court. Instead, he claims that his appropriate remedy is to file a petition for postconviction relief pursuant to R.C. 2953.21 as the Ohio Supreme Court allowed in *Gover*, supra. Hill and the trial court misread the procedural context in *Gover*.

{¶ 11} In *Gover*, the Ohio Supreme Court was presented with the issue of whether R.C. 2953.21 provides relief to a defendant who claims that he was denied the effective assistance of appellate counsel when the court failed to notify

---

1. The state conceded at oral argument that it had no objection to Hill's seeking a delayed appeal.

the attorney of the appointment and therefore no direct appeal was pursued. *Gover,* supra. In discussing the application of R.C. 2953.21, the court stated:

[T]hrough R.C. 2953.21, the General Assembly has provided a means for individuals convicted of crimes to challenge collaterally their convictions *after their direct appellate rights have been exhausted.* That statute provides that a person convicted of a criminal offense may file a petition for postconviction relief in the trial court that imposed the sentence, challenging the validity of the conviction on state and federal constitutional grounds.

(Emphasis added). *Gover,* 71 Ohio St.3d at 579, 645 N.E.2d 1246.

{¶ 12} However, Gover filed three pro se motions for delayed appeal, which were denied. Having found that Gover exhausted his direct appellate rights, the Ohio Supreme Court held that R.C. 2953.21 was the appropriate remedy when no direct appeal was taken due to ineffective assistance of appellate counsel in the "pre-appellate" process. Id. at 580–581, 645 N.E.2d 1246.

{¶ 13} In the instant case, however, Hill has not exhausted his direct appellate rights, because he has not moved to file a delayed appeal. Thus, *Gover* is procedurally distinguishable, and Hill's petition for postconviction release was premature.[2]

{¶ 14} Our holding is consistent with other jurisdictions. In *State v. Pishok* (Apr. 24, 2002), Seneca App. No. 13–02–14, discretionary appeal not allowed, 96 Ohio St.3d 1494, 2002-Ohio-4534, 774 N.E.2d 767, Pishok requested that his attorney file an appeal; however, the attorney failed to timely file a notice of appeal. The appeals court denied Pishok's motion to file a delayed appeal, and the Supreme Court refused to consider his appeal of the denial. Then, in *State v. Pishok,* Seneca App. No. 13–03–43, 2003-Ohio-7118, 2003 WL 23018745, discretionary appeal not allowed, 102 Ohio St.3d 1448, 2004-Ohio-2263, 808 N.E.2d 398, Pishok, with new counsel, filed a motion for postconviction relief pursuant to R.C. 2953.21 because no direct appeal had been taken. The trial court granted the motion pursuant to *Gover* in order to reinstate the time within which he could timely file a notice of appeal. The appellate court affirmed his conviction, and the Supreme Court again denied appeal. See, also, *Harding v. Russell* (C.A.6, 2001), 27 Fed.Appx. 372 (R.C. 2953.21 provided the appropriate relief for ineffective assistance of appellate counsel in the preappellate process when the defendant's motion for delayed appeal was denied).

{¶ 15} Therefore, we find that the trial court lacked jurisdiction to consider Hill's petition for postconviction relief when Hill had not sought a

---

2. This issue was raised by the prosecutor at the hearing on the motion for postconviction relief. The prosecutor requested that the trial court hold the motion in abeyance until Hill filed a motion for a delayed appeal.

delayed appeal.[3] Accordingly, the court's judgment vacating the initial judgment is reversed.

## Hill's Appeal

{¶ 16} Next, we turn to Hill's appeal of his conviction and sentence. Although we reversed the court's attempt to reinstate a later judgment to allow Hill time to file a direct appeal, we treat his appeal herein as a delayed appeal.

{¶ 17} The following evidence was presented at Hill's jury trial.

{¶ 18} On August 10, 2002, Antoinette Polk and some friends were at the home of her brother, Carlton, near Hill's residence. Polk and Hill had had a previous sexual relationship. That afternoon, Polk and Hill had a verbal altercation, during which Polk claimed that he had hit her with his hand and that she had thrown a beer bottle at him. Polk testified that Hill went inside his house and returned with a gun. Pierre Owens, a friend of Polk's nephew, testified that he saw Hill with the gun and told Hill not to shoot Polk because she was a girl. At that time, Greg Smith arrived at the scene and approached Hill and Polk. Smith testified that when he saw Hill point the gun in Polk's direction, he pushed her out of the way. Smith testified that he then heard about eight or ten gunshots. Smith was shot three times: once in the buttocks and once in the lower back, and one bullet grazed his rib cage. Smith saw Hill leave the scene in a van.

{¶ 19} Officer Edward Kutina, of the Cleveland Police Department, testified that he responded to a call that gunshots were fired in the area of East 71st Street and Donald Avenue. He testified that Smith was wounded and that Polk told him that David Hill was the shooter.

{¶ 20} In the early morning of August 11, Polk, who had spent the night at Carlton's house, and Akiya White were taking out the trash when Hill approached them and fired one shot at Polk, wounding her in the chest and causing her to fall to the ground. Hill then continued shooting at White, hitting her multiple times in the legs. The two women retreated into Carlton's house.

{¶ 21} Officer Michael Donegan testified that he arrived at the scene at 5:40 a.m. on August 11 and found Polk and White on the floor, bleeding. The women implicated Hill in the shooting.

{¶ 22} Hill denied shooting Smith, Polk, and White. He claimed that he was attacked on August 10 by Polk and her friends and that the attack caused him to

---

3. While we note that the state appealed only case No. CR–430754 and not case No. CR–432856, we find that this decision is applicable to both cases because subject matter jurisdiction cannot be waived and may be raised by a reviewing court sua sponte. *State v. Lomax,* 96 Ohio St.3d 318, 2002-Ohio-4453, 774 N.E.2d 249. The state's failure to raise this argument on appeal does not foreclose the court's authority to review the issue. Id.

leave his residence. He denied any involvement in the August 11 shootings. At the time of his arrest, he was seen discarding a handgun, which a ballistics examination matched to four empty shell casings found near the scene of the August 11 shootings.

{¶ 23} In September 2003, the jury found Hill guilty of two counts of attempted murder, two counts of felonious assault, each with one- and three-year firearm specifications, and one count of carrying a concealed weapon. The court sentenced him to four consecutive sentences of three years for the firearm specifications. Additionally, he was sentenced to seven years for each of the attempted-murder convictions, six years for each of the felonious-assault convictions, and six months on the concealed-weapon conviction, all of which ran concurrently. The total sentence was 19 years in prison.

{¶ 24} Hill raises six assignments of error. We will address them together and out of order where appropriate.

### Out–of–Court Statement/Sufficiency of the Evidence

{¶ 25} In his fifth assignment of error, Hill argues that the trial court erred when it permitted evidence of Akiya White's out-of-court statements that "David" shot her, when she never testified at trial. In his third assignment of error, Hill argues that the evidence was therefore insufficient to sustain his conviction for White's attempted murder.

{¶ 26} The admission or exclusion of evidence is a matter left to the trial court's sound discretion; therefore, it will not be disturbed absent an abuse of discretion. *State v. Lundy* (1987), 41 Ohio App.3d 163, 169, 535 N.E.2d 664; *State v. Duncan* (1978), 53 Ohio St.2d 215, 219, 7 O.O.3d 380, 373 N.E.2d 1234.

{¶ 27} In the instant case, Officer Donegan testified that White told him that Hill shot her. Hill claims that this testimony violated his Sixth Amendment rights under the Confrontation Clause.

{¶ 28} The Confrontation Clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In the recent case of *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that the testimonial statement of a witness who is absent from trial is to be admitted only when the declarant is unavailable, and only when the defendant has had a prior opportunity to cross-examine the declarant. Id. at 39, 124 S.Ct. 1354, 158 L.Ed.2d 177. Although the court declined to provide an exhaustive definition of "testimonial," it stated that the term encompasses, at a minimum, statements arising from preliminary hearings, grand jury investigations, previous trials, and police interrogations. Id. at 53, 124 S.Ct. 1354, 158

L.Ed.2d 177. The court further recognized as testimonial those statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177.

{¶ 29} The state argues that the *Crawford* testimonial hearsay rule does not apply retroactively to this case. We disagree. New rules of criminal procedure that expand the rights of the accused always have retroactive application to criminal cases pending on direct review. *State v. Cutlip,* Medina App. No 03CA0118–M, 2004-Ohio-2120, 2004 WL 895980, citing *Griffith v. Kentucky* (1987), 479 U.S. 314, 320–328, 107 S.Ct. 708, 93 L.Ed.2d 649. See, also, *State v. Allen,* Cuyahoga App. No. 82556, 2004-Ohio-3111, 2004 WL 1353169 ("Although we recognize the trial court did not have the *Crawford* decision at the time of its decision * * *, we are bound to apply the new law").

{¶ 30} Applying *Crawford* to the instant matter, we note that White made her statement to Officer Donegan when he arrived at the scene and interviewed the victims. Therefore, under *Crawford,* the statement is testimonial because it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would' be available for use at a later trial." *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. Consequently, the statement is not admissible under the Confrontation Clause unless (1) White was unavailable to testify and (2) Hill had a prior opportunity for cross-examination. Id. at 39, 124 S.Ct. 1354, 158 L.Ed.2d 177. White was not called as a witness to testify and thus was unavailable. However, the record indicates that Hill did not have a prior opportunity for cross-examination. Therefore, the admission of White's hearsay statement violated Hill's Sixth Amendment right to confront the witnesses against him.

{¶ 31} Nevertheless, this determination does not require reversal if no prejudice resulted and the error was harmless. "A violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt." *State v. Moritz* (1980), 63 Ohio St.2d 150, 17 O.O.3d 92, 407 N.E.2d 1268, at paragraph two of the syllabus. See, also, *State v. Hubbard,* Cuyahoga App. No. 83384, 2004-Ohio-4627, 2004 WL 1944810.

{¶ 32} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a

defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 33} Hill was convicted of attempted murder under R.C. 2903.02 and 2923.02 because he purposely attempted to cause White's death. Hill claims that the evidence is insufficient to establish that he "had a purpose to kill White." We disagree.

{¶ 34} R.C. 2901.22(A) defines the culpable mental state of purpose:

A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶ 35} The determination whether Hill had the requisite culpable mental state must be made in light of the totality of the circumstances.

"The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court."

*State v. Johnson* (1978), 56 Ohio St.2d 35, 38, 10 O.O.3d 78, 381 N.E.2d 637, quoting *State v. Huffman* (1936), 131 Ohio St. 27, 5 O.O. 325, 1 N.E.2d 313.

{¶ 36} It is a fundamental principle that a person is presumed to intend the natural, reasonable, and probable consequences of his voluntary acts. *Johnson,* supra. See, also, *State v. Seldon,* Cuyahoga App. Nos. 80129 and 80130, 2002-Ohio-5825, 2002 WL 31398708. Moreover, "[A] firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death." *State v. Widner* (1982), 69 Ohio St.2d 267, 270, 23 O.O.3d 265, 431 N.E.2d 1025, followed in *State v. Seiber* (1990), 56 Ohio St.3d 4, 14, 564 N.E.2d 408.

{¶ 37} Independent of White's improperly admitted statement and viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to convict Hill of White's attempted murder.

{¶ 38} Polk testified that when she and White took out the trash on the morning of August 11, Hill approached them and shot her. Polk testified that after she was shot and fell to the ground, she also saw White fall to the ground. She further testified that White was shot three times and as a result of her injuries had to use crutches to walk.

{¶ 39} Owens also testified that he watched Polk and White through the window. He stated that he saw someone approach them and then heard gunshots. He testified that White, covered with blood, entered the house through the back door.

{¶ 40} We find no merit to Hill's argument that because Polk and White "escaped," Hill did not intend to kill them, "or else he would have shot them each again." The natural, reasonable, and probable consequence of Hill's voluntary act of shooting in the direction of White and Polk would result, if successful, in their deaths.

{¶ 41} Therefore, the erroneous use of White's statement was harmless beyond a reasonable doubt, and the evidence was sufficient to support Hill's conviction for attempted murder.

{¶ 42} Accordingly, Hill's third and fifth assignments of error are overruled.

## Manifest Weight of the Evidence

{¶ 43} In his fourth assignment of error, Hill argues that his convictions for each count of attempted murder are against the manifest weight of the evidence.

{¶ 44} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the 13th juror and intrudes into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief."* (Emphasis added.) Black's supra, at 1594.

> * * * *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power

to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction").

Id.

{¶ 45} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. Additionally, circumstantial evidence and direct evidence inherently possess the same probative value and, therefore, should be subjected to the same standard. *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 46} Hill was convicted of attempted murder of both Polk and White. While Hill denied shooting Polk and White, the evidence indicates otherwise. Polk testified that when she and White took out the trash, Hill approached from the garage area and shot her. She stated that prior to his shooting her, he said, "Bitch, you thought I'd forget." Polk testified that White was standing next to her when Hill approached and that after she was shot, she saw White fall to the ground after being shot multiple times.

{¶ 47} Owens also testified that he saw someone approach Polk and White when they were outside, and then he heard gunshots. He further testified that when Polk and White came back into the house, they were covered in blood and that Polk stated that Hill shot her.

{¶ 48} Officer Gerald Sowul testified that he saw Hill drop a handgun on the day he was arrested, and Officer Donald Meel recovered the gun. Officer Nathan Willson testified that the four shell casings found at the crime scene were fired from the gun that Hill abandoned.

{¶ 49} Again, we are unpersuaded by Hill's argument that if he "acted with a purpose to kill them, he would have done so." We can only speculate what his intent was when he shot Polk and White. When the victims retreated to the house, he had no way of knowing whether the wounds sustained by the victims were fatal. Arguing now that if he had the intent to kill them he would have done so is disingenuous.

{¶ 50} The weight of the evidence suggests that the jury did not lose its way in convicting Hill of the attempted murders of both Polk and White. Therefore, we find Hill's convictions for attempted murder were not against the manifest weight of the evidence.

{¶ 51} Accordingly, we find no merit in Hill's fourth assignment of error.

### Postrelease Control

{¶ 52} In his sixth assignment of error, Hill argues that the trial court erred when it incorrectly advised him regarding the imposition of postrelease control, specifically the length of the term and the consequences of a violation of postrelease control.

{¶ 53} The notice requirements for postrelease control are specified in R.C. 2929.19(B)(3). A plain reading of R.C. 2929.19(B)(3) does not address the length of postrelease control, except in the event of a violation thereof.

{¶ 54} In *State v. Johnson*, Cuyahoga App. No. 83117, 2004-Ohio-4229, 2004 WL 1795318, this court declined to follow the argument that the trial court was required to notify the defendant of the length of postrelease control "when R.C. 2929.19 has so clearly stated what the notice requirements are and has not specified length of post-release control as one of them." Id. at p. 14.

{¶ 55} Hill erroneously relies on this court's holding in *State v. Morrissey* (Dec. 18, 2000), Cuyahoga App. No. 77179, 2000 WL 1876406, to support his argument that he was not informed of the length of postrelease control or the consequences of the violation. As we stated in *Johnson*, the length of postrelease control was not an issue in *Morrissey*; thus, it has no authority in this matter.

{¶ 56} The trial court, however, failed to comply with R.C. 2929.19(B)(3), which required the court to inform Hill that if he violated a condition of postrelease control, the parole board may impose a sentence of up to one-half of his original prison sentence. The state concedes this issue.

{¶ 57} Therefore, following the recent holding in *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, Hill's sentence is vacated, and this matter is remanded for resentencing.

{¶ 58} Accordingly, the sixth assignment of error is sustained because the trial court failed to advise Hill of the ramifications of violating postrelease control.

### Sentence

{¶ 59} In his first and second assignments of error, Hill challenges his sentence. He contends that the trial court erred in sentencing him to four three-year terms of imprisonment attendant to the firearms specifications when the evidence showed that he participated in only two transactions involving firearms. He also contends that the trial court erred when it imposed more than the minimum sentence for the felonious-assault and attempted-murder convictions.

{¶ 60} R.C. 2929.14(D)(1)(b) prohibits imposition of prison terms for more than one firearm specification for felonies that are committed as part of the "same act or transaction." "Same act or transaction" means a " 'series of

continuous acts bound together by time, space and purpose, and directed toward a single objective.'" *State v. Wills* (1994), 69 Ohio St.3d 690, 691, 635 N.E.2d 370, quoting *State v. Caldwell* (Dec. 4, 1991), Summit App. No. 14720, 1991 WL 259529. Thus, we must determine whether the acts constitute a single act or transaction.

{¶ 61} Hill argues that he was involved in no more than two criminal transactions, the shooting of Smith and Polk as alleged on August 10 and the shooting of Polk and White as alleged on August 11. Thus, he claims that only two firearm specifications should be imposed, not four.

{¶ 62} We agree with Hill as to the August 10 transaction. The evidence showed that Hill pointed a gun at Polk. Smith then grabbed Polk and pulled her back. Smith testified that he then heard eight to ten gunshots before he was shot. It is clear that Hill shot the gun in the direction of Polk; however, when Smith grabbed her, it was Smith who was injured. There was no evidence to suggest that Hill shot at Smith and Polk with separate objectives. Although Hill's action resulted in two separate criminal acts, they were bound together by space and time, as they occurred within a short distance and within seconds. See *State v. Salinas* (1997), 124 Ohio App.3d 379, 706 N.E.2d 381; *State v. Arnold* (Mar. 27, 1986), Cuyahoga App. No. 50405, 1986 WL 3722.

{¶ 63} Therefore, we find that the August 10 shooting constituted one transaction, and the firearm specifications for each felonious-assault conviction should have merged.

{¶ 64} However, we reach a different conclusion regarding the shootings on August 11. The evidence shows that Hill had two separate objectives when he shot Polk and then continued to shoot White after Polk fell to the ground. Had Hill intended to shoot only Polk, he would not have continued shooting White after Polk fell to the ground.

{¶ 65} Therefore, we find that the August 11 shootings were committed with separate objectives, and the firearm specifications for each attempted-murder conviction were properly separated. The trial court properly sentenced Hill to consecutive terms for the separate firearm specifications for the August 11 shootings.

{¶ 66} In Hill's second assignment of error, he claims that the trial court erred when it imposed more than the minimum sentences for the felonious-assault and attempted-murder convictions.

{¶ 67} This court reviews a felony sentence de novo. R.C. 2953.08. A sentence will not be disturbed on appeal unless the reviewing court finds, by clear and convincing evidence, that the record does not support the sentence or that

the sentence is contrary to law. R.C. 2953.08(G)(2); *State v. Hollander* (2001), 144 Ohio App.3d 565, 760 N.E.2d 929; *State v. Rigo* (June 21, 2001), Cuyahoga App. No. 78761, 2001 WL 740505. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 68} R.C. 2929.14(B) provides as follows:

[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

{¶ 69} The Ohio Supreme Court has held that "pursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings on the record at the sentencing hearing." *State v. Comer*, 99 Ohio St.3d 463, 469, 2003-Ohio-4165, 793 N.E.2d 473. However, the trial court is not required to give specific reasons for its finding pursuant to R.C. 2929.14(B)(2). Id., citing *State v. Edmonson* (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.

{¶ 70} In the instant case, Hill was not a first offender but had previously served a prison sentence. Therefore, under R.C. 2929.14(B), the court was not required to first consider imposing the minimum sentence.

{¶ 71} An offender convicted of a first-degree felony may be sentenced to a prison term of three to ten years, and two to eight years may be imposed for a second-degree felony. R.C. 2929.14(A)(1) and (2). In sentencing Hill to seven years for each attempted-murder conviction and six years for each felonious-assault conviction, the court imposed more than the minimum, yet not the maximum, as authorized by law.

{¶ 72} In imposing the sentence, the trial court found:

Imposition of consecutive sentences here in part is necessary to protect the public and to punish you for this outrageous conduct, that is the attempted murder of two individuals and the assault of two other individuals all with a firearm.[4]

---

4. The trial court ordered the sentence in the instant case to be served consecutively to the sentence imposed in case No. CR–431213. However, the sentence in CR–431213 was vacated,

I've also taken into consideration your prior conviction for a felonious assault on a peace officer with gun specifications and the 12–year sentence that I imposed under that one. I am finding, therefore, that consecutive prison terms are required here to protect the public and to punish you and they are not disproportionate to the harm that was committed. I'm also finding that your criminal history shows that consecutive terms are needed to protect the public, specifically the prior felony offenses that you have been convicted of * * *. I am not imposing the maximum term under any of these sentences here so I am not going to address that. Obviously for the record I also point to the fact that people's lives were put in danger as a result of these offenses * * *.

{¶ 73} After reviewing the findings and the rationale given, we hold that the court made the requisite findings under R.C. 2929.14(B).

{¶ 74} Hill also argues that the trial court erred in sentencing him to more than the minimum sentence, which he claims is in contravention of *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403,. We find *Blakely* inapplicable in this case because the sentence imposed on Hill was not beyond the statutory maximum.

{¶ 75} The *Blakely* court held that the "statutory maximum" for *Blakely*'s purposes and *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. *Blakely*, 542 U.S. 296, 124 S.Ct. at 2537, 159 L.Ed.2d 403.

{¶ 76} In *State v. Perry*, Cuyahoga App. No. 84397, 2005-Ohio-27, 2005 WL 23357, we declined to accept the proposition that *Blakely*, when applied to Ohio's sentencing structure, required that a jury make additional factual determinations in order for the trial court to impose a sentence on an offender that is more than the presumptive minimum. *Blakely* specifically states, "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Blakely*, 542 U.S. 296, 124 S.Ct. at 2536, 159 L.Ed.2d 403. See, also, *State v. Ford*, Cuyahoga App. No. 84138, 2004-Ohio-5610, 2004 WL 2367334 ("*Blakely* concerns the impropriety of a trial court's enhancement of a penalty for a crime beyond the maximum sentence, however, not the minimum").

---

· and that case was remanded for resentencing pursuant to *State v. Hill*, Cuyahoga App. No. 83078, 2004-Ohio-1248, 2004 WL 527958. Therefore, the only consecutive sentence imposed by the trial court in the case sub judice relates to the firearm specification and the underlying sentence.

{¶ 77} Hill's six-year prison sentence for each felonious-assault conviction and seven-year sentence for each attempted-murder conviction is well within, and does not go beyond, the standard sentencing range. Moreover, the findings made by the trial court under R.C. 2929.14(B)(2) do not constitute "additional facts" under *Blakely* and enhance his sentence past the standard range because the maximum sentence the appellant could receive is eight years for felonious assault and ten years for attempted murder.

{¶ 78} Therefore, we find *Blakely* inapplicable in this matter because a prison sentence was not imposed that exceeded the statutory maximum.

{¶ 79} Accordingly, we find some merit to Hill's first assignment of error because he should have been sentenced for three firearm specifications instead of four. However, his second assignment of error is overruled.

Conviction affirmed,
sentence vacated,
and cause remanded.

BLACKMON, A.J., and CELEBREZZE JR., J., concur.