JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his conviction by a jury on one count of possession of drugs in violation of R.C. 2925.11.
 {¶ 2} In late 2002, Cleveland police were investigating the sale of controlled substances at Cleveland Works, a local social service agency. David Roth, Cleveland Works' Director, and Michael Periandri Sr. and Michael Periandri, Jr., agency employees, were the primary subjects of the investigation.
 {¶ 3} On March 7, 2003, detectives Lyn Mudra and Greg Whitney used Brad Weiss, a confidential police informant, to conduct two separate controlled drug buys at Cleveland Works. Both times Weiss wore a hidden recording device allowing police to continuously monitor him and the others involved in the transactions.
 {¶ 4} On the morning of the 7th, Weiss purchased cocaine, oxycontin and a piece of jewelry. When he returned to Cleveland Works in the afternoon to purchase more cocaine, Weiss met with three persons: Michael Periandri, Jr., an anonymous cocaine dealer, and defendant. During this monitored transaction, Weiss personally observed defendant "snorting" cocaine. He reported defendant's identity and illegal acts to Detective Whitney. Weiss' statements to Detective Whitney prompted defendant's arrest.
 {¶ 5} Defendant was indicted for and then convicted of drug possession. After sentencing, defendant filed this appeal, in which he presents three assignments of error, the first of which follows:
"I. The admission of testimonial statements of nonw-itnesses denied the appellant his right to confrontation."
 {¶ 6} Defendant argues that the trial court erred in permitting Detective Whitney to tell the jury what Weiss told him about defendant using cocaine on the 7th. Because Weiss did not testify at trial, defendant argues that under the United States Supreme Court's recent decision in Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed. 2d 177, syllabus, Weiss' hearsay statements[1] are "testimonial" and, as such, they violate his Sixth Amendment right of confrontation.
 {¶ 7} As noted in Crawford, the Sixth Amendment's Confrontation Clause states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Crawford, supra, syllabus.
 {¶ 8} In Crawford, defendant's wife, exercising her spousal privilege under state law, did not testify at her husband's trial. Before trial, however, in a tape-recorded statement to police, defendant's wife described the stabbing her husband was charged with. The statement conflicted with defendant's claim that the stabbing was in self-defense.[2] Defendant argued that his wife's statement not only was inadmissible hearsay, but also violated his Sixth Amendment right of confrontation.
 {¶ 9} The district court determined that the statement, though hearsay, was nonetheless reliable and trustworthy underOhio v. Roberts, (1980) 448 U.S. 56, 65 L.Ed.2d 597,100 S.Ct. 2531.[3] The statement was admitted for the jury to hear. Defendant was subsequently convicted.
 {¶ 10} On appeal, the Supreme Court held the statement, though reliable under Roberts, inadmissible as a "testimonial" hearsay statement. The Court explicitly overruled Roberts and its reliability standard for out-of-court hearsay statements, which do not fit under any exception to the hearsay rule. According to the Court, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 69, 124 S.Ct. 1374.
 {¶ 11} The Court described the myriad forms a "testimonial" statement might take. "Testimonial" statements may include
""ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23;
"extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," White v. Illinois, 502 U.S. 346,365, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" * * *."
Id., at 52, 124 S.Ct. at 1365.
 {¶ 12} The Court concluded that the wife's taped testimonial statement should have been excluded because she was unavailable at trial and thus not subject to cross-examination. Accordingly, defendant was denied his Sixth Amendment right to confront his wife about the statement. Defendant's convictions were reversed.
 {¶ 13} Following Crawford, this court decided State v.Farris, Cuyahoga App. No. 84795, 2005-Ohio-1749. In Farris,
Cleveland police interrogated Reginald Tolbert in connection with a series of burglaries occurring in the area. Tolbert confessed to some of the burglaries. He identified defendant as his accomplice. Tolbert also informed police that defendant kept some of the stolen property and drugs in his apartment. While executing a search warrant, police they discovered drugs and criminal tools. Defendant was arrested and proceeded to trial.
 {¶ 14} At trial, Tolbert did not testify. Instead, the state presented one of the police officers to whom Tolbert had confessed and implicated defendant. The detective told the jury what Tolbert had told him about defendant and his role in the subject burglaries.
 {¶ 15} Following his convictions, defendant appealed and argued, among other issues, that Tolbert's statements to the detective were "testimonial" under Crawford and thus inadmissible. This court agreed and reversed defendant's convictions.
 {¶ 16} In the case at bar, Weiss went to Cleveland Works twice on March 7 to conduct controlled drug buys. Both times, he wore a hidden recording device. During his morning visit, Weiss purchased cocaine, oxycontin, and a piece of jewelry. When Weiss returned to Cleveland Works in the afternoon, he was directed to an office where he met three different men: Michael Periandri, Jr., an anonymous cocaine dealer, and defendant, whom he had never met before. As with the morning drug buy, Weiss' recording device captured the conversations between the men.
 {¶ 17} At trial, Detective Whitney explained how he learned that defendant was at Cleveland Works and using cocaine on March 7, 2004:
"Q: Okay. Now, Detective Whitney was that the first time that you had learned that Mr. Lazzaro may have done something inappropriate inside of Cleveland Works?
A: Yes.
Q: What did you do that day after Mr. Weiss told you this?
A: Notified you.
Q: And why did you notify me?
A: Because he had told me that there was an attorney inside Cleveland Works using cocaine.
Q: And what did you tell me?
A: That he stated his name was Lazzaro, Lazzario. He wasn't sure on the pronunciation of it.
Q: Did you know his first name?
A: Charles."
Tr. 663.
 {¶ 18} Weiss' statements to Whitney do not fit cleanly into the different categories of testimonial statements described inCrawford. Moreover, unlike the statement of the wife inCrawford or of Tolbert in Farris, Weiss' statements were not made during police interrogation.
 {¶ 19} Crawford, however, provides a benchmark from which an assessment can be made as to whether an out-of-court statement is "testimonial." According to Crawford,
""Testimony" * * * is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."
Id., at 51, citing 1 N. Webster, An American Dictionary of the English Language (1828).
 {¶ 20} Weiss' statements to Whitney describe defendant's presence and defendant's use of cocaine at Cleveland Works. Since confidential police informants rarely testify at criminal trials, it is reasonable to conclude that when Weiss told Whitney about defendant's illegal conduct, he knew that the information would not only lead to defendant's arrest but would be used against defendant at a subsequent trial.
 {¶ 21} Within the suggested parameters of Crawford, we conclude that Weiss' statements qualify as a statement "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, supra, at 52. Weiss' statements, therefore, are testimonial and thus violate defendant's Sixth Amendment right to confront Weiss. But our analysis does not end here.
 {¶ 22} A conviction will not be reversed, however, when other evidence adduced at a defendant's trial is "so overwhelming, and the prejudicial effect of the [subject statement] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error."State v. Moritz (1980), 63 Ohio St.2d 150, 156,407 N.E.2d 1268, citing Schneble v. Florida (1972), 405 U.S. 427, 430;State v. Hill, Cuyahoga App. Nos. 84846 84887,2005-Ohio-1501, at ¶ 31.
 {¶ 23} Though Weiss' statements violate defendant's Sixth Amendment right to confrontation, the next question is whether they prejudiced defendant or were otherwise harmless. UnitedStates v. Hasting (1983), 461 U.S. 499, 506, n. 4, 510-512,76 L.Ed.2d 96, 103 S.Ct. 1974.
 {¶ 24} In the case at bar, the evidentiary import of Weiss' statements inculpating defendant is merely duplicative of the other evidence of defendant's guilt. Michael Periandri, Jr. testified that he had known defendant for approximately fifteen years before the events of March 7. On that date, Periandri, Jr. telephoned defendant and asked him to notarize a car title. Periandri Jr. further explained that event:
"A: I spoke with him on the telephone early in the afternoon a short time before he came down to my place of employment.
Q: And what did you say to the defendant during that phone conversation?
A: During the phone conversation, I told him that I needed a car title notarized and — and that I had somebody on their way down there to bring me something and that I would take care of him for notarizing the title for me.
* * *
Q: Okay. And did the defendant respond to you when you made that representation?
A: Yeah.
Q: What did he say?
A: He said he would be down.
* * *
Q: Now, if you could, Mr. Periandri, describe for us the events of the afternoon of March 7th in terms of what's taking place in your office. Do you understand my Question?
A: Okay. In the office — let me see. Brad came down. The dealer — the dealer showed up. I had — I believe Brad stepped out of the office. The dealer came in, and we made — we made the transaction with Brad out of the office.
* * *
Q: And as Mr. Weiss steps out of your office, what takes place between you and Mr. — Mr. T?[4]
A: I gave him the money for the drugs. I weighed up the drugs, and then I opened up the door, and Mr. Lazzaro and Brad Weiss were at the door.
Q: Okay. Now, do you remember whether or not Mr. Lazzaro had been in your office prior to that time?
A: I don't believe he had.
Q: Okay. And as Mr. Lazzaro, the defendant, and Mr. Weiss come back in your office, please describe what takes place.
A: One of us closes the door — I don't remember who that it was — so no clients or other staff members could wander in. I opened up the drawer and I — I grabbed a pile off the top as well as me giving the title to Charlie to notarize, I grabbed a pile with a business card off the top, Charlie was sitting directly across from me. I put a pile in front of him. I closed the drawer back up. The dealer was approximately to the left a little bit behind me. Brad Weiss was seated over — over to the left in front of me. We had some conversation, I believe. The dealer asked Charlie why he was — what he was going to court for, that he heard he was going to court. First Charlie made a joke that he was going to court for raping a four year old [sic].
* * *
And he started laughing, and then he said, no, it's just a speeding ticket.
* * *
Q: And what happened next then in the sequence of events that you can best remember them to be?
A: Charlie — Charlie snorted. Charlie snorted the cocaine. Whether it was all of it or just a big pile, it was a large amount. Brad started laughing, and I started laughing also. The dealer eventually left. Brad went to Mr. Roth's office, and Charlie left."
Tr. 483, 488-492. Periandri, Jr. also identified defendant's voice on the March 7th police recording.
 {¶ 25} Without objection by defendant, Detective Whitney confirmed Periandri, Jr.'s identification of defendant and his use of cocaine on the 7th.
"Q: Okay. Now, directing your attention to any comments Mr. Periandri, Junior, that you recall that he made pertaining to March 7th of 2003, what do you recall Mr. Periandri, Junior stating about Mr. Lazzaro's conduct on March 7th of 2003?
A: That he — That Mr. Lazzaro had done cocaine in his office."
Tr. 678.
 {¶ 26} From the record before this court, we conclude that Periandri, Jr's testimony, standing alone, constitutes sufficient independent evidence of defendant's guilt.
 {¶ 27} We reject defendant's claim that Periandri, Jr. was not credible because he received a reduced sentence in exchange for testifying against defendant. Periandri, Jr. stated that, in exchange for a reduced sentence, the state expected him to "be honest" about what occurred on March 7. When asked why he agreed to testify, Periandri, Jr. explained that his initial motivation for testifying had little to do with defendant. Periandri, Jr. stated as follows:
"Q: What — well, what took place in between the first interview or second interview and your decision to cooperate with law enforcement?
A: My decision was based upon David. David bailed himself out, and he made a statement against us, and my initial reason for cooperating was I seen the way that this was going to go.
Q: What way did you — be real candid here, Mr. Periandri. What way did you see this going?
A: Like we were going to get dumped on. It was all going to get dumped on our shoulders. You know, he's never been in trouble with the law. Him and Mr. Lazzaro are both attorneys. We had been in trouble numerous times. They got the power. They know the people. They got the money. That — that we would end up taking the fall and doing a lot of time.
* * *
Q: Okay. Well, what ultimately, then, if you could, led to your decision to cooperate and testify against Mr. Lazzaro who has been your family friend and lawyer for years?
A: Well, when I agreed to cooperate I agreed to cooperate to the truth. Mr. Whitney, Mr. Mudra, Mr. Kasaris has all been on the up and up with us from the very beginning as far as what we are looking at, what we agreed to and — and I feel that if I told one lie or tried to cover up for somebody that it would in the end jeopardize me and hurt me."
Tr. 494-495. Periandri, Jr. further described the danger he was putting himself and his family in by deciding to testify against Roth and defendant. Periandri, Jr. explained that once drug dealers found out he had testified they would tell others who were already in prison. Periandri, Jr. anticipated that he would have reason to fear these other inmates once he was imprisoned. He acknowledged that his testimony could also put his family in jeopardy because the dealers know where they all live. From this record, a jury could properly find Periandri, Jr. was not motivated to fabricate testimony against defendant.
 {¶ 28} We also reject defendant's claim that Periandri, Jr. was "addicted to drugs" when he made his observations about defendant's use of cocaine on the 7th. Defendant's Brief on Appeal, at 17. There is no evidence that Periandri, Jr. was under the influence of drugs on that date or that his powers of observation were in any way compromised. We conclude that the jury could find Periandri, Jr. was a credible, albeit damaging, witness against defendant and that this constitutes independent evidence of defendant's guilt. When we compare Periandri, Jr.'s testimony to Weiss' statements, we conclude that the admission of Weiss' statements was not prejudicial to defendant.
 {¶ 29} Accordingly, we conclude it is clear beyond a reasonable doubt that admitting Weiss' statements to Detective Whitney was harmless error. Moritz, supra, at 156.
 {¶ 30} Defendant's first assignment of error is overruled.
"II. The trial judge erred by failing to hold a hearing to determine whether the prosecutor's off the cuff comments to the appellant were heard by the jury."
 {¶ 31} Defendant argues that the prosecutor made an inappropriate comment to him during trial. Because the jury may have heard the remark, defendant argues he was entitled to have the jury polled. Implicitly, defendant is arguing for a new trial because the jury may have heard the prosecutor tell defendant to "Wipe that smile off your face, asshole." Tr. 465.
 {¶ 32} The decision to declare a mistrial or whether to conduct a jury poll to determine whether jurors heard an improper comment is within the discretion of the trial court. State v.Washington, (Apr. 10, 1996), Hamilton App. No. C-950371, 1996 Ohio App. LEXIS 1441, at *16. Absent an abuse of that discretion, a court's decision not to declare a mistrial or to poll the jury will not be disturbed on appeal. Id. Moreover, a mistrial is appropriate "only when the ends of justice so require and a fair trial is no longer possible." Id., citing State v. Franklin
(1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. "A mistrial should not be declared in a criminal case where there have been no adverse effects on the substantial rights of the accused or the prosecution." Id. In the case at bar, the record establishes that when the subject comment was allegedly made, defense counsel was at sidebar. The record further demonstrates, however, that after the comment was made, defense counsel had returned to the trial table with his client. Apparently, either defendant did not relay the comment to his counsel at this point or if he did, his counsel decided not to bring it to the court's attention. The court adjourned for the day and it was not until the next day that defense counsel told the court about the comment. And, when the court was told, the following colloquy occurred:
"MR. DOYLE: * * * All I am indicating to you at this point is I was up at the sidebar. I didn't hear it. I have been told that's what he said, and I bring it to your attention as a precautionary measure. I don't know if the jury heard any of this.
THE COURT: I didn't hear it. You didn't hear it.
There hasn't been any record of it. So I am most certain the jury didn't hear it. You can bring out Mr. Periandri, Junior."
Tr. 466.
 {¶ 33} The record does not demonstrate that the comment was even made. Moreover, defense counsel never requested that the jury be polled to determine whether they heard the comment. Without a specific request for a jury poll, we cannot conclude that the court abused its discretion when it was not asked to actually do anything about the alleged comment.
 {¶ 34} Defendant's second assignment of error is without merit.
"III. The convictions are against the manifest weight of the evidence."
 {¶ 35} Defendant argues that his conviction must be reversed because neither Periandri, Jr.'s testimony nor Weiss' statements to Detective Whitney are credible.[5] According to defendant, because both men benefitted from presenting evidence against him, neither should be believed and, therefore, the jury's verdict is against the manifest weight of the evidence.
 {¶ 36} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Tibbs v. Florida (1982) 457 U.S. 31, at 42.
 {¶ 37} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325, 785 N.E.2d 439, at ¶ 54, citing Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
 {¶ 38} In the case at bar, defendant maintains that Weiss' inculpatory statements to Detective Whitney are not credible because Weiss is a career criminal who, "because of his repeated arrests, * * * had a continuing need for the favor of law enforcement."[6] Defendant's Brief on Appeal, at 16.
 {¶ 39} On direct examination, Detective Whitney freely testified about Weiss' extensive criminal history and the fact that he was a paid informant. The detective explained at length that, in exchange for Weiss' assistance to police, pending criminal charges against Weiss could be reduced or they could be extinguished altogether depending on how much he helped the police. Tr. 561-564. Detective Whitney was subjected to a full cross-examination by defendant.
 {¶ 40} From this record, we conclude that the jury heard everything about Weiss that defendant claims makes him unworthy of belief. However, because we found it error to admit his testimony, to evaluate the evidence under a manifest weight standard, we must review the evidence excluding Weiss' statements altogether. With that qualification, we find nothing in the record to challenge the jury's resolution of the conflicting evidence.
 {¶ 41} Defendant argues that Periandri, Jr. was not a credible witness. According to defendant, Periandri, Jr. testified against him only because he was promised a significantly reduced sentence in exchange for that testimony.
 {¶ 42} Like Detective Whitney in his testimony about Weiss' criminal history, Periandri, Jr. admitted his own criminal record on the witness stand. The jury heard everything about Periandri's forty-four count indictment in this case and the fact that police had reduced those charges and had promised him a reduced sentence if he testified against defendant. Periandri, Jr. was also subjected to a lengthy cross-examination by defendant. Tr. 470-557.
 {¶ 43} The trial transcript in this case amply demonstrates that the jurors were given the facts, most of which were negative, about the pending criminal charges against Periandri, Jr. As the "thirteenth juror," we do not find the jury lost its way in accepting his testimony that defendant was using cocaine on March 7, 2003, especially because defendant offered no evidence to rebut Periandri, Jr.'s testimony.
 {¶ 44} Accordingly, we find that defendant's convictions are not against the manifest weight of the evidence. Defendant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., Concurs. Gallagher, J., Concurs in judgment onlywith separate concurring opinion.
[1] The state does not dispute that Weiss' statements are hearsay as defined in Evid.R. 801. Under this rule, "hearsay," along with its major components, in relevant part, is defined as follows:
(A) Statement. — A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
(B) Declarant. — A "declarant" is a person who makes a statement.
(C) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
[2] Defendant's wife told police that she led her husband to the victim's apartment. The prosecutor invoked the hearsay exception for statements against penal interest. Wash. Evid.R. 804(b)(3), which is identical to Ohio Evid.R. 804(b)(3).
[3] Roberts held that an out-of-court statement of an unavailable witness against a criminal defendant may nonetheless be admitted at trial if the statement bears "adequate indicia of reliability." Roberts, at 66.
[4] The anonymous drug dealer.
[5] Defendant does not deny that the state offered proof for each element of the offense of cocaine possession. Because defendant does not challenge the "sufficiency of the evidence," the validity of his conviction stands or falls on our disposition of his credibility claim.
[6] Defendant repeats the argument he made in his first assignment of error: namely, Weiss' statements to Detective Whitney are hearsay and unreliable. Given our disposition of Assignment of Error I, we do not address that issue again here.
 CONCURRING OPINION