SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:
 {¶ 24} I concur in judgment only with the majority result vacating the conviction, albeit for different reasons.
 {¶ 25} While the majority focuses on the first assignment of error regarding the state's failure to establish the threshold value of five hundred dollars for a felony under R.C. 2913.49(I), a conviction for a misdemeanor can be sustained regardless of value under the language in R.C. 2913.49(B).
 {¶ 26} Nevertheless, in my view, it is unnecessary to decide that issue. Unlike the majority, I would address the second assignment of error and decide the case on that basis. For the reasons outlined below, I would find that Detective Meler's testimony regarding his investigation was largely based on hearsay statements and conclusions of Alltel investigator Patrick William. As such, I would sustain the second assignment of error and reverse the conviction.
 {¶ 27} The second assignment of error states:
 {¶ 28} "Ms. Ladson's right to confront the witnesses against her was violated when hearsay statements of Alltel investigator Patrick Williams were introduced through Detective Meler."
 {¶ 29} In Crawford v. Washington (2004), 541 U.S. 36, the United States Supreme Court held that where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. The oral statements by Investigator Williams to Detective Meler and the findings and statements from his written report implicating Ladson were clearly testimonial. Williams, as an investigator, knew his report could be used in a subsequent prosecution, and it is undisputed that Meler not only used the statements and the conclusions in the report as the basis of his testimony, but actually testified about them.
 {¶ 30} The trial testimony bears this out:
 {¶ 31} "Detective Meler: There were 11 cell phone accounts, fraudulent accounts, opened up in that same time, including the five cell phone accounts in victim Fuller's name. When he plotted calls that were made by these cell phones —
 {¶ 32} "The Court: Who are you speaking of?
 {¶ 33} "Detective Meler: The Investigator Williams in his report indicated —
 {¶ 34} "Defense Counsel: Your honor, I object to all of this stuff about William's [sic] report. Williams is not here to testify about what he found in his investigation. This detective is not qualified to testify as to what Williams determined in his investigation. That's all hearsay.
 {¶ 35} "Prosecutor: Your honor, I would object. [sic] This officer is qualified in that he is the investigating officer in this matter and this was a part of this investigation. He had to rely on that information.
 {¶ 36} "The Court: Overruled."
 {¶ 37} While Detective Meler could certainly rely on the Williams report, he could not testify about its contents. Further, while it is true that Meler did conduct an investigation independent of Williams's efforts, the record shows he nevertheless testified extensively about Williams's findings. While Ladson was free to cross-examine Meler on his testimony, she could not cross-examine Williams, the clear source for Meler's testimony. The inherent problem in being unable to cross-examine the true source of the testimonial evidence was discussed in the historical context in Crawford by referencing the trial of Sir Walter Raleigh.[1]
 {¶ 38} I am cognizant that in recent cases this court has carved out some narrow exceptions to Crawford involving testimonial statements that were either not offered to prove "the truth of the matter asserted"(State v. Smith, 162 Ohio App.3d 208, 2005-Ohio-3579) or were admitted for purposes of medical treatment or diagnosis (In re D.L., Cuyahoga App. No. 84643, 2005-Ohio-2320).
In addition, some admissions were found harmless (State v. Lazzaro,
Cuyahoga App. No. 84956, 2005-Ohio-4118).
 {¶ 39} The instant case, however, has no exception. Under Evid.R. 801, "hearsay" is defined as follows:
 {¶ 40} "(A) Statement. — A `statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
 {¶ 41} "(B) Declarant. — A `declarant' is a person who makes a statement.
 {¶ 42} "(C) Hearsay. `Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 43} The statements by Williams and the contents of his report were classic hearsay, and they were offered to prove the truth of the allegations against Ladson. While Detective Meler was free to testify about his investigation, his testimony invariably included what Investigator Williams told him, as well as the specific contents of Williams's report. This denied Ladson her right to confront Williams directly, violating her Sixth Amendment right to confrontation. For these reasons, I would vacate the conviction.
[1] "The most notorious instances of civil-law examination occurred in the great political trials of the 16th and 17th centuries. One such was the 1603 trial of Sir Walter Raleigh for treason. Lord Cobham, Raleigh's alleged accomplice, had implicated him in an examination before the Privy Council and in a letter. At Raleigh's trial, these were read to the jury. Raleigh argued that Cobham had lied to save himself: `Cobham is absolutely in the King's mercy; to excuse me cannot avail him; by accusing me he may hope for favour.' 1 D. Jardine, Criminal Trials 435 (1832). Suspecting that Cobham would recant, Raleigh demanded that the judges call him to appear, arguing that `[t]he Proof of the Common Law is by witness and jury: let Cobham be here, let him speak it. Call my accuser before my face. . . .' 2 How. St. Tr., at 15-16. The judges refused, id., at 24, and, despite Raleigh's protestations that he was being tried `by the Spanish Inquisition,' id., at 15, the jury convicted, and Raleigh was sentenced to death." Crawford, at 44.
"* * * Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices. Raleigh was, after all, perfectly free to confront those who read Cobham's confession in court." Id. at 51.